**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRYSSOULA ARSENIS,<br><br>                Plaintiff,<br><br>         v.<br><br>M&T BANK s/b/m HUDSON CITY SAVINGS BANK,<br><br>                Defendant. | Civil Action No. 23-2601 (MAS) (JBD)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant M&T Bank s/b/m Hudson City Savings Bank's ("Defendant") motion to dismiss Plaintiff Chryssoula Arsenis's ("Plaintiff") Complaint (ECF No. 1). (ECF No. 12).[1] Plaintiff opposed (ECF No. 18), and Defendant replied (ECF No. 19). After careful consideration of the parties' submissions, the Court decides Defendant's motion without oral argument pursuant to Local Civil Rule 78.1. For the reasons outlined below, Defendant's motion is granted.

---

[1] Plaintiff's motion for an extension of time to file an opposition brief to Defendant's motion (ECF No. 13) is granted. Accordingly, the Court considers Plaintiff's opposition briefing in deciding this motion.

I.  **BACKGROUND**

On November 29, 2007, Plaintiff gave Defendant a promissory note in the principal amount of $795,000. (Def.'s Moving Br. 4, ECF No. 12-2; Ex. A to Mot. Dismiss[2] ("Promissory Note") *9,[3] ECF No. 12-8.) To secure the Promissory Note, Plaintiff and Charalampos Arsenis executed a mortgage in the principal amount of $795,000 to Defendant. (Def.'s Moving Br. 4; Ex. B. to Mot. Dismiss ("Mortgage") *20, ECF No. 12-8.) This Mortgage related to property located at 6 Quail Run in Warren, New Jersey (the "Mortgaged Property"). (Mortgage *20.)

Sometime after executing the Mortgage, Plaintiff defaulted under the terms of the Promissory Note. (*See* Compl. 1, ECF No. 1.) As such, on September 12, 2022, Defendant commenced a foreclosure action against Plaintiff (the "Foreclosure Action") in state court. *See M&T Bank s/b/m Hudson City Savings Bank v. Chryssoula Arsenis, et al.*, No. F-009595-22 (N.J. Ch. filed Sept. 12, 2022) (Def.'s Moving Br. 4.) On March 21, 2023, the Foreclosure Action was removed to this Court by Plaintiff. (Foreclosure Action, No. 23-1609, ECF No. 1.) On July 17, 2023, however, this Court remanded the matter to state court for continued proceedings.[4] (Foreclosure Action, ECF No. 13.)

This action and the Foreclosure Action arise from the same subset of facts and allegations: Defendant's foreclosure of the Mortgaged Property and Defendant's alleged failure to modify

---

[2] The Court considers several of Defendant's exhibits attached to its motion because they are integral to Plaintiff's Complaint as this matter stems from a foreclosure initiated against Plaintiff in state court. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that "a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment'"). Specifically, in this action Plaintiff alleges that Defendant's initiation of foreclosure proceedings despite an obligation to modify a federally mandated agreement violated various federal laws. (*See* Compl. 2-3, 9-10.) Accordingly, any documents submitted by Defendant that contextualize or underly the foreclosure proceedings are properly considered by the Court at this stage.

[3] Page numbers preceded by an asterisk refer to page numbers atop the ECF header.

federally mandated agreements. (*See* Compl. 2-3, 9-10; Foreclosure Action, Answer & Countercls. *60-61, ECF No. 1-1.) Specifically, in this action, Plaintiff alleges that Covid-19 "caused mortgage defaults" which were "allowed and encouraged by widespread and readily available forbearance [a]greements with [Defendant]." (Compl. 2.) Plaintiff further alleges that during the relevant period, she applied for, and was granted, at least one[5] loan modification Trial Period Plan (the "TPP"). (*See* Compl. 2; *see also* Ex. A. to Compl. ("TPP") *1, 9 ECF No. 1-2.) The TPP was a first step towards a permanent loan modification, which Plaintiff ultimately sought. (TPP *1; *see* Compl. 2.) Plaintiff alleges that despite the TPP, Covid-19-related forbearance, and timely payments under the TPP, Defendant still proceeded with a foreclosure in violation of the Real Estate Settlement Procedures Act (the "RESPA") codified at 12 C.F.R. § 1024.21, the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") codified at 15 U.S.C. § 116 *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA") codified at 15 U.S.C. § 1692 *et seq.* (*See generally* Compl.)

Relevant to the instant motion, Plaintiff's allegations in her Complaint in this matter essentially mirror Plaintiff's allegations in her Answer and Counterclaims in the Foreclosure Action. (*See generally* Compl.; Answer & Countercls., Foreclosure Action, *60-61, 65.) In the Foreclosure Action, Plaintiff brought counterclaims against Defendant predicated on a theory that Defendant "wrongfully refus[ed] to convert [the TPP] to a permanent modification" which

---

[4] The Court notes that Plaintiff appealed this Court's decision to remand the Foreclosure Action. (Foreclosure Action, No. 23-1609, ECF No. 17.) The appeal is still pending a decision by the Third Circuit. (*Id.*)

[5] Plaintiff alleges she was approved for two separate TPPs: one on January 11, 2022 and another on July 14, 2022. (Compl. 2.) It appears from the Complaint that Plaintiff alleges Defendant's failure to convert the July 14, 2022 TPP into a "final modification" violated various federal statutes. (*See id.* at 2, 4-5.)

Plaintiff alleges she was entitled to under the CARES Act. (Answer & Countercls., Foreclosure Action, *60-61.) Here too, Plaintiff alleges that Defendant impermissibly "refused to convert [the TPP] to a final modification" in violation of the CARES Act. (Compl. 2-3.)

Plaintiff also brings similar claims in this action as she brings against Defendant in the Foreclosure Action. As noted above, both Plaintiff's Complaint in this matter and her Answer and Counterclaims in the Foreclosure Action allege violations of the CARES Act. (Compl. 10; Answer & Countercls., Foreclosure Action, *60-61.) Additionally, Plaintiff seeks to bring RESPA and FDCPA claims in this case, and notably, Plaintiff "reserve[d] the right to assert" RESPA and FDCPA claims against Defendant in the Foreclosure Action.[6] (Answer & Countercls., Foreclosure Action *65.)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2)[7] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most

---

[6] It is unclear to the Court what legal effect a "reservation of rights" in an Answer has to the preservation of claims. Neither party provided any briefing on this issue. Nevertheless, the Court finds the reservation noteworthy because at a minimum it shows that Plaintiff contemplated all the claims she brings here when filing her Answer and Counterclaims in the Foreclosure Action.

[7] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state that the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

**III.     DISCUSSION**

Defendant moves to dismiss Plaintiff's Complaint in this matter contending that: (1) dismissal is appropriate under the entire controversy doctrine; (2) this Court should abstain from adjudicating Plaintiff's claims; and/or (3) dismissal is appropriate because Plaintiff fails to state a claim upon which relief can be granted. (*See generally* Def.'s Moving Br.)

**A.     Entire Controversy Doctrine**

First, the Court rejects Defendant's attempt to apply the entire controversy doctrine to this matter. Defendant contends that New Jersey's broad entire controversy doctrine, codified as New Jersey Court Rule 4:30A, is a sufficient basis to dismiss Plaintiff's Complaint in this matter because Plaintiff's claims in this matter "relate entirely to [the] Foreclosure Action and the [Mortgage]." (Def.'s Moving Br. 11-12.) Defendant then contends that "[al]though [the] entire controversy [doctrine] is most frequently applied in a subsequent action after a previous action has gone to judgment, there is nothing in [New Jersey Court Rule 4:30A] or relevant case law making

5

such application so limited." (Def.'s Moving Br. 12.) While the Court understands Defendant's frustration with the filing of the instant Complaint while the related Foreclosure Action is ongoing, Defendant has failed to demonstrate that the entire controversy doctrine is an appropriate mechanism to dismiss Plaintiff's claims prior to a final judgment in the Foreclosure Action.

To be clear, the Third Circuit has found that absent a final judgment in a previous action, New Jersey's entire controversy doctrine cannot operate as grounds to dismiss a related action. *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 885, 888 (3d Cir. 1997) (considering the applicability of the entire controversy doctrine under New Jersey Court Rule 4:30A and detailing that the entire controversy doctrine cannot be applied absent a final judgment in a prior matter). As the Foreclosure Action is still ongoing and has not concluded in a final judgment, Defendant's entire controversy contention necessarily fails.

### B. Colorado River Abstention

Defendant next contends that this Court should "decline jurisdiction over Plaintiff's claims pursuant to the *Colorado River* abstention doctrine." (Def.'s Moving Br. 5-6.) For the reasons outlined below, the Court agrees.

"The *Colorado River* doctrine allows a federal court to abstain, either by staying or dismissing a pending federal action, when there is a parallel ongoing state court proceeding." *Peavy v. U.S. Bank Tr., N.A.*, No. 15-6001, 2016 WL 3566965, at *2 (D.N.J. June 30, 2016) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976)). "The doctrine is to be narrowly applied in light of the general principle that 'federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.'" *Id.* (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)). Nevertheless, abstention may be proper where parallel cases exist and "wise judicial administration, giving regard to conservation

of judicial resources and comprehensive disposition of litigation," warrants such an action. *Colo. River*, 424 U.S. at 817 (citation omitted).

Ultimately, "[w]hether abstention is appropriate is a two-part inquiry." *Peavy*, 2016 WL 3566965, at *2. "First, a Court must determine whether . . . two [ongoing] actions are parallel." *King v. Brock & Scott, PLLC*, No. 22-4981, 2023 WL 3626439, at *3 (D.N.J. May 24, 2023) (citing *Ryan v. Johnson*, 115 F.3d 193, 196 (3d Cir. 1997)). If parallel state and federal cases are ongoing, the Court then must evaluate a "multi-factor test to determine whether 'extraordinary circumstances' meriting abstention are present." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton Inc.*, 571 F.3d 299, 308 (3d Cir. 2009) (citing *Spring City Corp. v. Am. Bldgs. Co.*, 193 F.3d 165, 171 (3d Cir. 1999)).

The relevant considerations a court must weigh in considering whether parallel cases are an "extraordinary circumstance" warranting abstention are:

> (1) which court first assumed jurisdiction over a relevant res, if any; (2) whether the federal court is inconvenient; (3) whether abstention would aid in avoiding piecemeal litigation; (4) which court first obtained jurisdiction; (5) whether federal or state law applies; and (6) whether the state action is sufficient to protect the federal plaintiff's rights.

*St. Clair v. Wertzberger*, 637 F. Supp. 2d 251, 255 (D.N.J. 2009) (quoting *Rycoline*, 109 F.3d at 890). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *King*, 2023 WL 3626339, at *4 (quoting *Colo. River*, 424 U.S. at 818-19).

      *i.*    *Parallel Case Analysis*

The Court first assesses whether this action and the Foreclosure Action are parallel cases that may require this Court to abstain. "[P]arallel cases involve the same parties and 'substantially

7

identical' claims, raising 'nearly identical allegations and issues.'" *Id.* at 3. (quoting *IFC Interconsult, AG v. Safeguard Intern. Partners, LLC*, 438 F.3d 298, 306 (3d Cir. 2006)). This action and the Foreclosure Action involve the same parties (Plaintiff and Defendant) and in both matters Plaintiff either expressly brings or reserves a right to bring claims under the FDCPA, RESPA, and the CARES Act. (Complaint 9-11; Answer & Countercls., Foreclosure Action, *60-61.) Moreover, both Plaintiff's allegations and claims in this action and in the Foreclosure Action arise out of the same foreclosure initiated by Defendant. (Answer & Countercls. *60-65; *see generally* Compl.) Even more specifically, Plaintiff's claims in both actions derive from Defendant's alleged failure to make permanent a federally-mandated TPP. (*Id.*) This action and the Foreclosure Action, therefore, involve the same parties, substantially identical claims, and nearly identical allegations and issues.

   The Court also finds it relevant to its parallel case analysis that Plaintiff appears to have brought this federal action only after a motion for summary judgment was filed against her in the Foreclosure Action. (*See* Def.'s Moving Br. 4-5.) To the extent that Plaintiff filed this action as an attempt to delay or interfere with the Foreclosure Action, it would not be the first time this Court saw a plaintiff perform this maneuver. Specifically, in *Benedict v. JPMorgan Chase Bank, N.A.*, a plaintiff initiated a federal action while state foreclosure actions were pending against her in state court. No. 15-2293, 2016 WL 3100752, at *1-2 (D.N.J. Jan. 25, 2016). This Court ultimately abstained under the *Colorado River* doctrine, and in so doing, noted as relevant to its finding that the federal and state actions were parallel and that it appeared the initiation of the federal action was an attempt "to interfere with the state foreclosure process and otherwise litigate claims that are currently being addressed in the state court." *Id.* at *2.

Here, the Court is presented with a strikingly similar factual scenario. Defendant contends that after it filed a summary judgment motion in the Foreclosure Action, Plaintiff removed the Foreclosure Action to federal court, and then nine days after this Court remanded the Foreclosure Action, she initiated the instant action asserting many of the same claims she originally brought as counterclaims or affirmative defenses in state court. (*See* Def.'s Moving Br. 4-5; *see also* Compl. 2, 9-11; Answer & Countercls., Foreclosure Action, *60-65; Foreclosure Action, ECF No. 1.) In sum, like in *Benedict*, it appears on the facts outlined above that Plaintiff may have brought this action in an effort to delay or interfere with the state court proceedings.

Whatever Plaintiff's motivations in bringing this suit, the similarities between this case and the Foreclosure Action are all but absolute. Accordingly, the Court finds that this action and the Foreclosure Action are parallel cases.

### ii. Abstention Factors Analysis

Having established that this action and the Foreclosure Action are parallel cases, the Court now considers whether this case is an "extraordinary circumstance" justifying abstention. As set forth above, the relevant factors a court must weigh when considering this question are:

> (1) which court first assumed jurisdiction over a relevant res, if any; (2) whether the federal court is inconvenient; (3) whether abstention would aid in avoiding piecemeal litigation; (4) which court first obtained jurisdiction; (5) whether federal or state law applies; and (6) whether the state action is sufficient to protect the federal plaintiff's rights.

*St. Clair*, 637 F. Supp. at 255 (quoting *Rycoline*, 109 F.3d at 890).

The first factor favors abstention. Importantly, the Mortgaged Property is a relevant res in both this action and the Foreclosure Action. This is because Defendant's initiation of foreclosure proceedings against the Mortgaged Property is the basis for the Foreclosure Action, and Defendant's initiation of foreclosure proceedings against the Mortgaged Property is the basis for

9

at least two of Plaintiff's claims in the instant matter. (Compl. 9-11; Compl. *16, Foreclosure Action, ECF No. 1-1; *See* Foreclosure Action, Answer & Countercls. *60-61.) With this in mind, the state court assumed jurisdiction over a relevant *res* (the Mortgaged Property) in the Foreclosure Action before the instant action was initiated in federal court. *BIL Mgmt. Corp. v. N.J. Econ. Dev. Auth.*, 310 F. App'x 490, 492 (3d Cir. 2008) ("[T]he presence of an *in rem* dispute in the state court action weighs in favor of abstention"); *see also Highland Lakes Country Club & Cmty. Ass'n v. Franzino*, 892 A.2d 646, 654 n.5 (N.J. 2006) ("Foreclosure is a *quasi in rem* action."). As such, the first factor favors abstention.

The second factor also favors abstention. Plaintiff contends that "[a]djudicating [her] claims in a single forum would avoid duplicative proceedings and conserve resources." (Pl.'s Opp'n Br. 8, ECF No. 18.) The Court agrees. As this Court ordered that the Foreclosure Action be remanded to state court, the federal court is an inconvenient forum to litigate Plaintiff's instant action because it requires the parties to simultaneously litigate the same matter in two separate courts. As such, the second factor favors abstention.

Third, abstaining from this matter is critical to avoid the risk of piecemeal litigation. To be clear, if this Court were to find in Plaintiff's favor on her CARES Act claim, for example, such a finding may conflict directly with any finding the state court may enter to the contrary in the Foreclosure Action.[8] In *St. Clair*, this Court considered *Colorado River* abstention in the context of a state court foreclosure involving an FDCPA claim. 637 F. Supp. 2d at 255. The *St. Clair* court found that if it were to find that defendants in that matter violated the FDCPA, such a finding would risk an "impermissible direct contradiction of the final judgment of foreclosure, if it [was]

---

[8] Moreover, because Plaintiff reserved the right in the Foreclosure Action to bring FDCPA and RESPA claims, should she choose to exercise that right, this Court risks a contradictory ruling on *all* of Plaintiff's claims in this matter.

10

entered" by the state court. *Id.* The Court echoes this prior reasoning here again. Were the state court to reach a different result than this Court on the key issues underlying the litigation, it might "throw into turmoil the parties' rights and obligations over [P]laintiff's home and mortgage, as well as the comity between courts." *King*, 2023 WL 3626439, at *4 (quoting *St. Clair*, 637 F. Supp. 2d at 255). The third *Colorado River* factor, therefore, heavily favors abstention.

Fourth, neither party disputes that the state court first obtained jurisdiction over the dispute between Plaintiff and Defendant. In fact, the Foreclosure Action was removed to this Court from state court while a summary judgment motion was pending before being remanded back to state court again. (*See* Foreclosure Action, ECF No. 1.) As such, the fourth factor favors abstention.

The fifth factor is neutral as to abstention because Plaintiff asserts both state and federal claims in this action and the Foreclosure Action. (Compl. 9-11; Foreclosure Action, Answer & Countercls. *63-65.)

Finally, as to the sixth factor, "the state court is an adequate forum to review [a] [p]laintiff's federal claims." *Benedict*, 2016 WL 310752, at *3. The Court recognizes that notwithstanding the ability of the state court to adjudicate federal claims, "the presence of federal-law issues must always be a major consideration weighing against" abstention. *King*, 2023 WL 36226439, at *5 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983)). The state court here, however, is uniquely suited to better adjudicate federal claims pertaining to foreclosure proceedings "given the state court's familiarity with foreclosure actions." *Id.* (citation omitted). This is particularly true here where the parties litigated the Foreclosure Action up to the filing of summary judgment motions in state court before Plaintiff sought to bring this parallel action in federal court. Moreover, the Court finds it noteworthy that Plaintiff initially brought her CARES Act claim as a counterclaim in state court and did not immediately seek removal of her claims.

11

(Answer & Countercls., Foreclosure Action, *60-61.) This shows that, at least to some extent, Plaintiff considers state court an appropriate forum to adjudicate her federal claims in the first instance.

Based on consideration of the above factors, the Court finds that this case is extraordinary and justifies abstention. The Court will therefore abstain from hearing Plaintiff's case.[9]

## IV.   CONCLUSION

For the reasons outlined above, the Court finds that this is an appropriate case to apply the *Colorado River* abstention doctrine. As such, Defendant's motion to dismiss is granted.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[9] As this Court has determined it should abstain from the adjudication of this matter, the Court does not reach Defendant's contentions regarding the merits of Plaintiff's claims.